## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No.: 2:13-cr-109-FtM-38CM

JUAN URBINA-MORA

_____

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon referral by the Honorable Sheri Polster Chappell of Defendant's Motion to Dismiss Indictment With Prejudice Pursuant to 8 U.S.C. § 1326(d) ("Motion to Dismiss") and Request for an Evidentiary Hearing (Doc. 24) filed on January 31, 2014.   The United States filed its Response to Defendant's Motion to Dismiss ("Response") (Doc. 28) on February 18, 2014, and Defendant filed a Reply to Government's Response (Doc. 38) on March 18, 2014.   The undersigned held a hearing on March 24, 2014, heard argument and received into evidence stipulated exhibits A1-F (Docs. 34-1-34-7).   Defendant was present and represented by counsel.   For the reasons set forth herein, the Court respectfully recommends that the Motion to Dismiss be granted, and the indictment be dismissed.[2]

Defendant Juan Urbina-Mora ("Defendant" or "Urbina-Mora") is charged in a one-count indictment with illegal re-entry into the United States, in violation of 8

---

[1] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14)** days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

[2] This case is scheduled for the April trial term, with a status hearing set for April 14, 2014.

U.S.C. § 1326(a).   He seeks to collaterally attack his prior removal order, pursuant to 8 U.S.C. § 1326(d), on the grounds that the underlying removal proceedings violated his Fifth Amendment due process rights because the waiver of appeal was not knowing and voluntary.   In order to do so, the burden is on Defendant to prove: (1) he exhausted any administrative remedies that may have been available to seek relief from the order; (2) the removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.   8 U.S.C. § 1326(d)(1)-(3); *United States v. Zelaya,* 293 F.3d 1294, 1297 (11th Cir. 2002); *United States v. Rodriguez,* 162 F. App'x 853, 856-57 (11th Cir. 2006).   It is the Government's burden to show that a waiver of appeal is knowing and voluntary and comports with due process.   *United States v. Aguila-Urbay*, 480 F. App'x 564, 572 (11th Cir. 2012).

## I.     Background and Overview

The following facts are not in dispute.   *See* Doc. 28 at 1.   Defendant, a native and citizen of Mexico, first entered the United States on or about January 15, 1970. He became a temporary resident on September 8, 1987, and a lawful permanent resident on December 1, 1990, holding a green card.   Prior to his deportation, he had been living and working in the United States for three decades and had a wife and four children who are U.S. citizens.

On August 30, 1999, Defendant pleaded no contest and was convicted in circuit court in Hendry County, Florida, for the driving under the influence – fourth offense, a felony, and driving while license suspended or revoked.   He was sentenced to 20

months and 3 days imprisonment.   On April 20, 2000, while he was serving his

sentence, the Immigration and Naturalization Service ("INS") placed a detainer on

Defendant and initiated removal[3] proceedings against him, pursuant to Section

237(a) of the Immigration and Nationality Act ("INA"), which permits removal of an

alien convicted of an "aggravated felony."[4]   8 U.S.C. § 1227(a)(2)(A)(iii).

On June 22, 2000, Defendant had his first hearing before United States

Immigration Judge ("IJ") Charles Sanders, U.S. Immigration Court, Miami, FL.

Doc. 34-2 at 1.   Defendant appeared by video conference from the North Florida

Reception Center, Lake Butler, FL.   *Id.*   He was not represented by counsel.

Defendant does not speak English and was assisted by a Spanish language

interpreter.   *Id.*   The hearing was continued to July 18, 2000, because Defendant

expressed a desire to obtain counsel to represent him in the proceedings.   *Id.* at 6.

On July 18, 2000, the hearing resumed; and Defendant informed the IJ that he had

---

[3] While the parties refer to these proceedings as both "removal" and "deportation," the Court notes that the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), replaced the term "deportation" with the term "removal" to describe the process by which an alien is removed from the United States.   *See Evangelista v. Ashcroft*, 359 F.3d 145, 147 n.1 (2d Cir. 2004).   Thus, the Court refers to this process as "removal."

[4] Although the weight of authority of immigration decisions at that time held that driving under the influence was a "crime of violence" under 18 U.S.C. § 16(b), thus an aggravated felony, *see, e.g., In re Magallanes-Garcia*, 22 I. & N. Dec. 1, 1998 WL 133301, at *1 (BIA Mar. 19, 1998), two years later the Board of Immigration Appeals ("BIA") withdrew *Magallanes* and held it was not.   *In re Ramos*, 23 I. & N. Dec. 336, 2002 WL 1001049 (BIA Apr. 4, 2002). The U.S. Supreme Court confirmed the finding in *Leocal v. Ashcroft*, 543 U.S. 1 (2004) (holding that defendant's DUI conviction, in violation of Florida law, is not a crime of violence under 18 U.S.C. § 16.)   *Leocal* has been found to be retroactive, an issue of statutory interpretation.   *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005).   See further discussion in Section IV.C.   At the hearing, counsel for Urbina-Mora argued that had he not unknowingly and involuntarily waived his right to appeal, Urbina-Mora could have been Leocal.

been unable to retain counsel, claiming that he did not have the capability to find an attorney or speak with his wife because he was in jail.   Doc. 34-4 at 1-2. Nevertheless, the IJ continued with the hearing and Defendant proceeded *pro se*.[5] *Id.* at 2.   Once again, the proceedings were translated by a Spanish language interpreter.[6]

## II.   Removal Proceedings

### A.   June 22, 2000

At the first hearing held on June 22, 2000, the IJ advised Defendant no less than four times that no relief to a removal order was available to him, and that the outcome of his hearing would be no different if he was represented by counsel. Defendant nevertheless expressed a desire to retain counsel, and the IJ adjourned the hearing and advised him that he would be asked to go forward *pro se* if he did not have representation.   In relevant part, the first hearing transpired as follows:

> IJ:   The government has placed you at this removal process hearing, at this hearing you have certain rights.   You have the right to counsel of your choice or you can contact the free legal services organization offices are provided by attachment-A, those organizations will represent you at little or no cost to you and at no expense to the government. You also have the right to present evidence, give your testimony or documentary, call witnesses that can testify on your behalf and object to any evidence or witnesses brought forth by the government.   At the conclusion of the

---

[5] Although Defendant is not specifically challenging the legality of the deportation order on the basis he was denied the right to counsel, it is a factor the Court can consider when determining whether Defendant's waiver was knowing, intelligent, and voluntary.   *Narine v. Holder,* 559 F.3d 246, 250 (4th Cir. 2009) (noting that where an alien is unrepresented, the need for an explicit explanation of a waiver of appeal rights is especially important).

[6] The Court has been provided with and reviewed both the audio and written transcriptions of both hearings.   Docs. 34-1 – 34-4.

hearing process, I'll make a decision in your case, if you disagree with my decision you have a right to take an appeal to the Board of Immigration Appeals in Falls Church, Virginia.   Have you understood your rights?

Defendant:   Yes.
. . .

IJ:   Okay, now do you want to go forward here today and represent yourself, waive the appearance of counsel and conclude your hearing process?

Defendant:   What?!   I lose my right to have an attorney or something?

IJ:   No, you have the right to counsel…you can come back next month I'll give you 30-days to hire an attorney.

IJ:   However, if the government sustains the charge that you've been convicted of an aggravated felony,…sir, then there is no relief available to you and you will be sent back to Mexico.

IJ:   And since you've already been a permanent resident of the United States there wouldn't be any relief available to you.

Defendant:   Well my family's not…,well now my case is not that so I wouldn't be able to be given an opportunity, I have my family here, I have my children here, my wife is here…

IJ:   Well that's unfortunately the situation you're in sir. You've been convicted of an aggravated felony which is the…driving under the influence.   Was somebody hurt in the accident that you were involved in?

Defendant:   No not anybody, I've never crashed into anybody that's the problem.

IJ:   Okay, you were just driving under the influence of alcohol?

Defendant:   Well, that's what the police put down, I'd already dropped people off at their homes and I wasn't feeling very well so I took some pills and I was trying to go to the hospital and that's when I fell into the ditch and that's what they wrote.

IJ:              Okay there is a Board of Immigration Appeals decision called [I]n re Magdellanous [sic].   In decision 3341 Board of Immigration Appeals 1998 that says…aggravated driving under the influence and sentenced to 2 and a half years is a crime of violence and therefore an aggravated felony.   Now you've been sentenced to 20-some months I believe, right?

Defendant:  20-months, 20-months not more than 20-months.

IJ:              Okay, it says, 20.1 months is that correct?

Defendant:  Yes.
                …

IJ:              At any rate, it appears sir, that that would be an aggravated felony under the board [of immigration appeals] case, so…

Defendant:  Uh-huh.

IJ:              As an…Sir, as an aggravated felon as a permanent resident, there wouldn't be any relief under the law available to you.
                …

IJ:              Well sir, unfortunately the case law says you're an aggravated felon.   If you are an aggravated felon with the case law there is no relief available to you so you're going to have to go back to Mexico.   And if you take your family with you, you can do that or they can come and visit you but, because of the four convictions the State of Florida wanted to get you off the highway before you hurt somebody or caused somebody great bodily harm.   So, my question to you is do you want to go forward here today and represent yourself and conclude this hearing or, do you want to hire a lawyer to represent you, it's up to you.

IJ:              I believe the results would be the same sir either way.

Defendant then questioned the IJ about obtaining Social Security benefits, and the IJ responded he had nothing to do with that and he could write to the Social

Security Administration when eligible.   The exchange continued:

> IJ:        Okay…what would you like to do?
>
> Defendant:  Well, just, that's fine if you want to deport me go ahead and deport me but I'm just saying that's not right because I've worked here in agriculture and I got immigration cards and was told that would be a privilege and this is just not right.
>
> IJ:        Sir, I don't have anything to do with your social security benefit or payments.   That's up to you and the Social Security Administration.
>
> IJ:        The only thing I need to know from you is do you want to hire a lawyer to represent you at this hearing and if you don't, then we'll go forward and finish this case today.
>
> Defendant:  (interpreter talking over client)…try and see if I…find an attorney…my family…
>
> IJ:        Alright, I'll see you back July 19, 2000 at 8:30 in the morning with your attorney, to present your case to the court.   If you don't have an attorney on that date I'll ask you to go forward and, you can represent yourself.   Do you understand?
>
> Defendant:  Yes.

Doc. 34-2.

## B.   July 18, 2000

At the July 18, 2000[7] proceedings, Defendant reported that he had been unable to contact counsel, and the IJ conducted the hearing with Defendant acting *pro se*.   The IJ advised Defendant twice more that no relief to his removal was available.   On more than one occasion, Defendant expressed a desire to reserve his

---

[7] Although the IJ stated at the June hearing that the hearing would resume on July 19, 2000, the hearing actually was resumed on July 18, 2000.

right to appeal, but ultimately relented to the IJ's repeated, compound, and leading questioning.   In relevant part, the second hearing transpired as follows:

> IJ: Alright, sir, at your last hearing I continued your case to give you the opportunity to hire counsel of your choice or contact one of the free legal services organizations, did you have a chance to do that?
>
> Defendant: No.   I tried to talk to my wife but I don't have, but I don't have a phone.
>
> Defendant: And also, to be able to grab an attorney is kind of tough to do because they don't let us accept collect calls here and it's pretty tough here in jail.
>
> IJ: Alright, do you wish to go forward then and represent yourself and waive the appearance of counsel?
>
> Defendant: See the best thing to do is just to go ahead and deport me because I don't have the ability, the capability here to be able to speak with an attorney, the ease available to me to speak with an attorney.
>
> IJ: Alright, so you wish to go forward and represent yourself, is that correct?
>
> Defendant: I don't have the ease (talking over and talking in Spanish to client) I don't have the facility and ease to be able to contact an attorney sir, (unintelligible) I don't have the possibility to do that.
>
> IJ: Alright, would you raise your right hand please and be sworn.
> …
>
> IJ: Alright sir, under the immigration laws that's considered to be an aggravated felony and in decision 3341, matter of Magdalanous *[sic]*, would you designate Mexico as a country to return to and do you understand that you are removable from the United States having been convicted of an aggravated felony?
>
> IJ: Sir, yes or no?

Defendant:    Yes…okay I'll take that…it's just that you won't let me talk…

IJ:    Sir, I asked you a question.

Defendant:    I have, I'll try to answer sir, is that I've lived here now for 30-years, I've been here for 30-years and have been working and have been living here for 30-years and have no privileges, I have children who have been born here who are U.S. citizens born here, residents here.

IJ:    Well sir, because you are, a permanent resident since 1990, and having been convicted of an aggravated felony, you are ineligible for any relief under the immigration laws.

IJ:    So, I'm going to enter an order removing you from the United States to your native country of Mexico.  Do you understand that decision and accept it as final and waive appeal?

Defendant:    Well in that case can I get a letter from you so that when I turn 73 years old I can use my because, because I have my number, my social security number, I've been working for 30-years, and I don't want to lose all of that and retirement.

IJ:    Sir, you can apply to the Social Security but a letter from me won't make any difference, you need to apply to them directly, for you benefits.
…

IJ:    I made my decision accept it as final and waive appeal? Yes or no?

Defendant:    No, as far as signing . . . no, I'm not going to sign any papers.   I'm not going to do anything until I have a period to talk to an attorney.  No, I don't want to be deported. I'm not going to accept anything until I have a chance...if you want to deport me go ahead and deport me but, I'm not going to sign any papers.

Defendant:    If you want to deport me down to Mexico, Castro Mexico, go ahead and do that if you want to deport me go ahead and do that.

IJ:              So you wish to reserve appeal in this case, is that correct?

Defendant:   Yes, but, I've been trying but I can't really do anything here.   I've been trying to communicate with my family and I have like no authority to communicate with my family.

IJ:              Sir, because you've been convicted of an aggravated felony, there is no relief available to you under the law.   So, I have no discretion whatsoever to keep you in the United States, I'm issuing an order sending you back to Mexico if you disagree with this decision you have the right to take an appeal to the Court of Immigration Appeals or you can accept it as final and waive appeal.   What would you like to do?

Defendant:   Well I'll probably, Judge, if you want to deport me that's fine, but afterwards, I want to let you know that when I get down to Mexico and see if I can find an attorney, there's attorneys down there, there's also Americans down there, that live there down there.   Find someone that could possibly help me with this matter.   I'm not the kind of person who's been involved in, I haven't done anything like, in the sense of killing anybody, I'm not involved in drugs, nothing of that nature, the only problem I have is that thing about being drunk that was (unintelligible).

IJ:              Alright, so you accept my decision as final and waive appeal, is that correct?

Defendant:   That's fine, that's fine if that's what you want, yes.

IJ:              Alright, government accepts the waiver?

Immigration
Services
Attorney:    Yeah.

Doc. 34-4.   The immigration services attorney's notes from the removal proceedings show that the clerk wrote "R[espondent] reserves appeal," which was later crossed out and "final order" was written.   Doc. 34-6.   The Government now concedes that

the waiver was invalid.

Classifying Defendant's conviction as an "aggravated felony" under the INA, and relying on *In re Magallanes-Garcia*, 22 I. & N. Dec. 1, 1998 WL 133301, at *1 (BIA Mar. 19, 1998) (finding that aggravated driving under the influence was a crime of violence and thus an aggravated felony for which an alien is deportable),[8] the IJ ordered that Defendant be removed to Mexico pursuant to Section 237(a) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii). Doc. 34-4 at 3, Doc. 34-5 ("Removal Order"). Defendant did not appeal the Removal Order or seek any other relief, and he was removed from the United States to Mexico on or about September 26, 2000. Doc. 34-7.

### III.   Motion to Dismiss Indictment

According to the indictment, Defendant reentered the United States, and on or about June 26, 2013, was found in Hendry County, Florida. He was arrested on August 27, 2013, for illegal reentry into the United States after having been previously removed without first having obtained the consent of the Attorney General of the United States or his successor, the Secretary of Homeland Security. Docs. 1, 10.

---

[8] As noted, *Magallanes* has since been withdrawn by the BIA, and driving under the influence is not a crime of violence under 18 U.S.C. § 16(b). *In re Ramos*, 23 I. & N. Dec. 336, 2002 WL 1001049 (BIA Apr. 4, 2002). *See also Leocal*, 543 U.S. at 1 (holding that defendant's Florida DUI conviction is not a crime of violence under 18 U.S.C. § 16); *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005) (finding *Leocal* retroactive, as an issue of statutory interpretation). Thus, Defendant's conviction could not legally form the basis for the Removal Order, as further discussed in Section IV.C.

In a prosecution for illegal reentry under 8 U.S.C. § 1326(a), the government must prove that the defendant was previously "denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal [wa]s outstanding." 8 U.S.C. § 1326(a)(1). The Supreme Court has read into the element for a Section 1326(a) violation that the prior removal must be a "lawful" one, thereby permitting a collateral challenge. *United States v. Mendoza-Lopez*, 481 U.S. 828, 835-36 (1987), discussed in Section IV, *infra*. The existence of a deportation order is an adjudicative fact to be proven by the government in prosecuting Section 1326 violations. *Zelaya*, 293 F.3d at 1297.

Defendant claims that the Removal Order cannot, as a matter of law, serve as the prior "lawful" removal order required to establish the prior removal element of a Section 1326(a) violation; because Defendant did not validly waive his right to appeal, and the removal proceedings violated his right to an opportunity for judicial review. The Government "without hesitation" agrees that Defendant did not waive his right to appeal the Removal Order, but argues that Defendant did not exhaust his administrative and judicial remedies, as required, in order to collaterally attack a removal order under 8 U.S.C. § 1326(d). Doc. 28 at 5-6. The Government also responds that the removal proceedings did not deprive Defendant of judicial review because he could have appealed, but did not.

## IV.  Analysis

Section 1326(d) permits an alien charged with illegal reentry to challenge the underlying removal order on which the illegal reentry is based. To do so under this

section, the alien must demonstrate that: (1) the alien exhausted any administrative remedies that may have been available to seek relief from the order; (2) the removal proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.   8 U.S.C. § 1326(d)(1)-(3).   Dismissal of an indictment under Section 1326 is proper if the alien defendant mounts a successful collateral attack on his prior removal.   *Zelaya*, 293 F.3d at 1297.   This provision effectively codified[9] the U.S. Supreme Court's earlier ruling in *Mendoza-Lopez*, 481 U.S. 828.

In *Mendoza-Lopez*, the Supreme Court held that an alien has the right to collaterally challenge the validity of a removal order on due process grounds when the order is being used by the government to establish an element of a criminal offense and the removal proceedings "effectively eliminate[d] the right of the alien to obtain judicial review."   *Id.* at 839.   The decision resolved a split in the circuits "whether a federal court must *always* accept as conclusive the fact of the deportation order, even if the deportation proceeding was not conducted in conformity with due process."   *Id.* at 834 (emphasis in original).

The Court acknowledged that although Congress did not intend the validity of the deportation order to be contestable in Section 1326 prosecutions, its inquiry did not end there.

> If the statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights

---

[9] Nine years after *Mendoza-Lopez*, Congress amended Section 1326, adding subsection (d). 8 U.S.C. § 1326(d); *see* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 441(a), 110 Stat. 1214 (1996).

> of the alien the deportation proceeding may have been, the statute does
> not comport with the constitutional requirement of due process.

*Id.* at 837 (emphasis in original).  The Court further recognized prior precedent, which established that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding."  *Id.* at 837-38 (emphasis in original).

In *Mendoza-Lopez*, a group removal proceeding had been held in the immigration court prior to defendants' removal.  During the removal proceedings, the immigration judge did not make clear how much time he would allow the defendants to apply for suspension, and one of the defendants asked a question that demonstrated he did not under the concept of suspension of deportation, but the immigration judge failed to explain further.  481 U.S. at 830, 832 n.4.  Two defendants moved to dismiss their indictments in the district court alleging that the immigration law judge inadequately informed them of their right to counsel at the hearing and accepted their unknowing waivers of the right to apply for suspension of deportation.  *Id.* at 831.  The district court permitted the collateral attack, concluding that defendants had not made knowing and intelligent waivers of their rights to appeal, finding it "inconceivable that they would so lightly waive their rights to appeal, and thus to the relief they now claim entitlement, *[sic]* if they had been fully apprised of the ramifications of such a choice."  *Id.* at 832 (quoting district court's opinion).  Particularly applicable to the facts in this case, the district court further held that the:

> failure to overcome these defendants' lack of understanding about the proceedings, which is apparent from listening to the tape recording, totally undermined the reliability of the proceedings [and that] substantial justice was not done.

*Id.* Accordingly, the district court dismissed the indictments in both cases. *Id.* The Eighth Circuit Court of Appeals affirmed, noting a conflict among the circuits, and agreeing with those courts of appeals that had concluded that a "material element of the offense prohibited by § 1326 was a 'lawful' deportation." The court of appeals concluded:

> [b]ecause the defendants did not fully understand the proceedings, the hearing was fundamentally unfair, and the deportation order was obtained unlawfully. Thus, it cannot stand as a material element forming the basis of the charges against the defendants.

*Id.* at 832 (citation omitted).

Affirming the court of appeals' decision, the Court found there was a due process violation, because the IJ permitted waivers of the right to appeal that were not considered or intelligent. *Id.* at 840. The Court held that when "fundamental procedural defects" occur at a removal proceeding, direct review of the determination is unavailable, and therefore the prior removal proceedings could not be used to enhance the penalty for an unlawful entry under Section 1326. *Id.* at 840-41. *See also DeGarcia v. United States Atty. Gen.*, 221 F. App'x 815, 818 (11th Cir. 2007) (recognizing that an alien who is present in the United States is entitled to due process under the Fifth Amendment and thus must be given notice and an opportunity to be heard in the removal proceedings). Under this backdrop, the Court considers Defendant's Motion to Dismiss the indictment in this case.

## A.  Exhaustion of Administrative Remedies

The first requirement under 8 U.S.C. § 1326(d) is that the alien exhaust all his administrative remedies that may have been available to him.   8 U.S.C. § 1326(d)(1). The Government has conceded that Defendant did not intend to waive his right to appeal the removal order,[10] but argues that while Defendant told the IJ he wanted to obtain an attorney once he was back in Mexico and had every right to appeal, he failed to do so, and thus did not exhaust his administrative remedies.   Doc. 28 at 5.

Whether a waiver is knowing and voluntary is a subjective test wherein the only relevant state of mind is that of the defendant.   *Aguila-Urbay*, 480 F. App'x at 572.   Defendant contends that he did not knowingly waive his right to appeal, because the IJ informed him (several times in both hearings) that no further relief was available to him, while at the same time asking him whether he wanted to appeal or accept the decision as final.   Thus, the key question presented is whether Defendant is exempt from the exhaustion requirement under these circumstances because his waiver was not knowing and voluntary.

Although the Eleventh Circuit has not spoken specifically on the issue, in facts somewhat analogous to the case before this Court, the Ninth Circuit has found that a defendant is excused from the exhaustion requirement when the waiver of an administrative appeal did not comport with due process because he received erroneous advice from the immigration judge and the defendant's waiver was not

---

[10] As noted, it is the Government's burden to show that a waiver of appeal is knowing and voluntary and comports with due process.   *See Aguila-Urbay*, 480 F. App'x at 572.

"considered and intelligent."  *United States v. Pallares-Galan*, 359 F.3d 1088, 1096-97 (9th Cir. 2004).   In *Pallares-Galan*, although the defendant was informed of his right to appeal, the court found that the defendant was excused from meeting the exhaustion requirement on two grounds: an examination of the colloquy between the IJ and the defendant revealed that the defendant was erroneously advised that he was ineligible for relief, and his waiver was not considered and intelligent.  *Id.* at 1096.   Specifically with regard to waiver, the IJ failed to follow up to comments made by the defendant such as "[i]t would be better if I leave my children, that's fine" when asked whether he wanted to appeal.  *Id.* at 1098.   The court found that this comment conveyed confusion regarding the appeals process and what appeal and waiver might have meant for Pallares and his family.  *Id.*   The failure to follow up may have conveyed the message to Pallares that he should accept the IJ's decision and not appeal "despite his evident desire to vindicate his rights."  *Id.*

In *United States v. Zarate-Martinez*, the defendant was similarly informed by the IJ that he would have a right to appeal, but in a group setting, to which the defendant answered "yes."  133 F.3d 1194, 1197 (9th Cir. 1998).   Although the IJ later held an individual conversation with the defendant during which the judge asked if he understood his rights and the defendant answered "yes," the court found that the group waiver did not qualify as a voluntary and intelligent waiver because "it only informed the detainees of the right to appeal and suggested to them that the opportunity to appeal would be presented at some future time."  *Id.*

These cases are consistent with Supreme Court precedent as set forth in

*Mendoza-Lopez* and codified as Section 1326(d), setting forth a framework to ensure that an alien is afforded due process during an immigration proceeding, and are persuasive authority for this case.[11]   Here, the Removal Order stated that appeal had been waived, and Defendant was led to believe by the IJ that he had no further recourse, which was erroneous advice.   Doc. 34-5.   It is true that under the immigration regulations, an appeal may not be filed by any party who has waived appeal, and thus the decision of the immigration judge becomes final.   8 C.F.R. §§ 1240.15, 1003.3(a)(1), 1003.39, 1240.14.[12]   The BIA has found, however, that even if a party has waived appeal, the BIA still has jurisdiction to consider a challenge to the validity of an appeal waiver.[13]   *In re Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1322, 2000 WL 656628 (BIA May 18, 2000) (citing *Mendoza-Lopez*, 481 U.S. at 840).

In *Rodriguez-Diaz*, respondent accepted the IJ's decision as final at the hearing but subsequently appealed the decision.   *Id.*   The BIA noted that although respondent stated at the hearing that he accepted the decision as final, it found that an effective appeal waiver did not occur and that the appeal was properly before the board.   *Id.*   In that case, the BIA ultimately denied respondent's appeal finding no impropriety in the IJ's conduct.   *Id.*

The Eleventh Circuit has found that where a defendant "failed to avail himself of administrative remedies or pursue opportunities for judicial review of the order of

---

[11] In a case of first impression, courts may seek guidance from analogous cases in other circuits.   *United States v. Davenport*, 935 F.2d 1223, 1232 (11th Cir. 1991).

[12] Congress has given the Secretary of Homeland Security the power to establish regulations necessary to carry out his authority under the INA.   8 U.S.C. § 1103.

[13] Removal is stayed during the pendency of an appeal.   8 C.F.R. § 1003.6(a)-(b).

removal" by seeking reconsideration from the BIA, the defendant has failed to exhaust his administrative remedies under 8 U.S.C. § 1326(d). *United States v. Rodriguez-Martin*, 353 F. App'x 217, 218 (11th Cir. 2009); *Zelaya*, 293 F.3d at 1297. Although Defendant could have filed a direct appeal to the BIA challenging the validity of the appeal waiver, the question remains whether Defendant should be exempted or excused from doing so because his waiver was not considered and intelligent. The undersigned has carefully reviewed the audio recordings and transcripts of the proceedings, as well as listened to the arguments of counsel at the hearing, and concludes that Defendant is exempt from the exhaustion requirement because (1) the IJ gave Urbina-Mora erroneous advice regarding his appeal rights, and (2) Defendant's waiver of his right to appeal was not considered and intelligent.

On one hand, Defendant was informed by the IJ at the first hearing on June 22, 2000, that he had the right to appeal to the BIA if he disagreed with the IJ's decision. Doc. 34-2 at 1. When asked if he understood this right, Defendant responded, "yes." *Id.* At the second hearing on July 18, 2000, the IJ again informed Defendant of his right to take an appeal to the BIA if he disagreed with the decision. Doc. 34-4 at 5. On the other hand, and in direct contradiction to these statements, the IJ told Defendant six times over the course of both hearings that he had no relief available to him because he had committed an aggravated felony, and the "results would be the same either way." Docs. 34-2, 34-4. During some of these exchanges, when the judge was telling Defendant that there was no relief available to him, he

also repeatedly asked Defendant a compound question – whether he accepted the

decision as final and waived appeal:

> IJ:         However, if the government sustains the charge that you've
>             been convicted of an aggravated felony,…sir, then there is
>             *no relief available to you* and you will be sent back to
>             Mexico.
>             …
>
> IJ:         And since you've already been a permanent resident of the
>             United States *there wouldn't be any relief available for
>             you*.
>             …
>
> IJ:         As an…Sir, as an aggravated felon as a permanent
>             resident, *there wouldn't be any relief under the law
>             available to you.*
>             …
>
> IJ:         Well sir, unfortunately the case law says you're an
>             aggravated felon.   If you are an aggravated felon with the
>             case law *there is no relief available to you* so you're going
>             to have to go back to Mexico.   And if you take your family
>             with you, you can do that or they can come and visit you
>             but, because of the four convictions the State of Florida
>             wanted to get you off the highway before you hurt
>             somebody or cause somebody great bodily harm.   So, my
>             question to you is do you want to go forward here today and
>             represent yourself and conclude this hearing or, do you
>             want to hire a lawyer to represent you, it's up to you.   *I
>             believe the results would be the same either way.*
>             …

Doc. 34-2 (emphasis added).

> IJ:         Well sir, because you are, a permanent resident since 1990,
>             and having been convicted of an aggravated felony, *you are
>             ineligible for any relief under the immigration laws.*
>             …
>
> IJ:         So, I'm going to enter an order removing you from the
>             United States to your native country of Mexico.   Do you
>             understand that decision and accept it as final and waive
>             appeal?

|       | ...                                                                                                                                                                                                                                                                                                                                                                                                                                                                                    |
|-------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| IJ:        | I made my decision accept it as final and waive appeal? Yes or no?                                                                                                                                                                                                                                                                                                                                                                                                           |
| Defendant: | No, as far as signing...no, I'm not going to sign any papers.[] <br> ...                                                                                                                                                                                                                                                                                                                                                                                                     |
| IJ:        | So you wish to reserve appeal in this case, correct?                                                                                                                                                                                                                                                                                                                                                                                                                         |
| Defendant: | Yes, but, I've been trying I can't really do anything here.[]                                                                                                                                                                                                                                                                                                                                                                                                                |
| IJ:        | Sir, because you've been convicted of an aggravated felony, *there is no relief available to you under the law*.  So, I have no discretion whatsoever to keep you in the United States, I'm issuing an order sending you back to Mexico if you disagree with this decision you have the right to take an appeal to the Court of Immigration Appeals or you can accept it as final and waive appeal.  What would you like to do?                                                   |

Doc. 34-4 (emphasis added).

During the hearing on Defendant's motion, the Government conceded that the IJ's statements – that there was no relief available to Defendant – amounted to "bad advice," but still contended that Defendant knew he had the right to appeal yet did not do so.   Thus, the argument goes, he cannot now come into court and challenge the removal when he did not exhaust the administrative remedies that were available to him in the first place.[14]   The issue though is whether Defendant should be excused or exempted from the exhaustion requirement given the admittedly "bad advice" from the IJ, coupled with the IJ's contradictory and compound statements, as well as the

---

[14] The Government concedes that the waiver was not considered and intelligent, but stopped short of conceding that Defendant's due process rights were violated.

overall tone of the proceedings.    The Court believes that excusing Defendant from the exhaustion requirement is consistent with due process.

First, the IJ made contradictory and compound statements regarding Defendant's rights.    At the same time the IJ was asking Defendant if he wanted to waive his appeal, he was also informing him that there was no further relief available to him, which was erroneous.    Defendant could have filed a direct appeal to the BIA challenging the validity of the appeal waiver, as discussed *supra*.    The IJ's comments, however, conveyed to Defendant that any effort to appeal would be futile. Just as in *Pallares*, the comments made by Defendant in this case – "just go ahead and deport me," while at the same time expressing a desire to appeal and concern for his family – conveyed that Defendant was confused about what it would mean for him to appeal for which there was no clarification or follow up offered by the IJ.    Docs. 34-2 at 3, 34-4 at 1.

While it is true that the immigration court is not required to inform Defendant about the remedies available to him, it cannot misstate the law or mislead Defendant. In *United States v. Lopez-Solis*, the Eleventh Circuit held that due process is not violated when the immigration court fails to specifically inform the defendant about the availability of judicial remedies.    503 F. App'x 942, 946-47 (11th Cir. 2013).    The court in that case, contrary to the facts present here, particularly noted that the IJ "did not make any affirmative misstatements that misled Lopez-Solis into believing that he could not appeal to federal court."    *Id.* at 946.

Although the *Lopez-Solis* case was in the context of a Section 1326(d)(2) challenge, in which the defendant argued that no one told him that he had a right to *judicial* appeal of the underlying proceedings, it has been recognized by the courts that the analysis of Sections (d)(1) and (d)(2) is often the same, because "an invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid." *United States v. Lopez*, 445 F.3d 90, 99 n.6 (2d Cir. 2006). *See also United States v. Boliero*, 923 F. Supp. 2d 319, 331 (D. Mass. 2013) (because due process violations prevented the defendant from exhausting administrative remedies, the same violations deprived the opportunity for judicial review).

Second, the audio recordings reveal that the tone of the proceedings were not conducive to a finding that Defendant's waiver was knowing and voluntary.   The IJ hurried through the proceedings, was forceful and short with Defendant, and at times Defendant and the IJ spoke over each other and the interpreter.   Defendant was not represented by counsel.   The IJ repeatedly questioned Defendant about his waiver, even though Defendant had previously stated that he wanted to appeal.   In the end, Defendant appeared to give up and stated: "That's fine, that's fine if that's what you want, yes."   Doc. 34-4 at 5.   The immigration services attorney's notes support the conflicting decision.   Doc. 34-6.   The prospect of removal was undoubtedly troubling to Urbina-Mora, as has he had lived in the United States lawfully for decades, and his wife and children were here.   While a removal proceeding is an administrative proceeding, and not a criminal prosecution, the results can have criminal implications

because "[t]he result of those proceedings may subsequently be used to convert the misdemeanor of unlawful entry into the felony of unlawful entry after deportation." *Mendoza-Lopez*, 481 U.S. at 838-39.   Therefore, defendants must be afforded due process.   *Id.*; *DeGarcia v. United States Atty. Gen.*, 221 F. App'x 815, 818 (11th Cir. 2007).

Although due process is not offended when the IJ fails to provide the respondent with notice of judicial remedies, when, as here, the IJ makes material misstatements to an unrepresented alien about the viability of his appellate rights, at the same time he is attempting to obtain a knowing and considered decision from Defendant whether to waive appeal, a "meaningful" opportunity for review is precluded.   *Mendoza-Lopez*, 481 U.S. at 838.   In this case, the contradictory and erroneous statements by the IJ, as set forth above, had a substantial likelihood of confusing Defendant as to whether he in fact had a right to appeal or whether his efforts would be futile.   Whether a waiver is knowing and voluntary is a subjective test wherein the only relevant state of mind is that of the defendant himself.   *Aguila-Urbay*, 480 F. App'x at 572.   Based upon the record, the Court finds that Defendant was not afforded due process and is exempt from exhausting his administrative remedies because he was effectively deprived of such remedies.

## B. Opportunity for Judicial Review

An invalid waiver of the right to administrative exhaustion often results from the same lack of understanding that renders a waiver of judicial review invalid. *Lopez*, 445 F.3d at 99 n.6.   The Court's analysis regarding the exhaustion of

administrative remedies is necessarily intertwined with its consideration of whether Defendant was improperly deprived of the opportunity for judicial review. Both involve a consideration as to whether the proceedings comported with due process as set forth in *Mendoza-Lopez*.

At the time of Defendant's removal hearing and contrary to the IJ's advice, there were in fact further judicial remedies available to Defendant under the immigration laws. *See Richardson v. Reno*, 180 F.3d 1311, 1316 n.5 (11th Cir. 1999) (jurisdiction-stripping provision in IIRIRA did not foreclose constitutional challenges to the statute from being raised); *United States v. Vasquez-Montalban*, 263 F. App'x 822, 824 (11th Cir. 2008) (noting that post-IIRIRA and before the Real ID Act, appellate courts retained jurisdiction to review whether an aggravated felony conviction exists to support removal); *Tapia Garcia v. INS*, 237 F.3d 1216, 1220 (10th Cir. 2001) (same). As discussed above, the Eleventh Circuit has held that due process is not offended where no notice of these remedies is provided, 503 F. App'x at 946-47, but the Court finds that *Lopez-Solis* is distinguishable. Unlike this case, no affirmative misstatements were made to Lopez-Solis regarding his right to appeal.

Reading this factor together with the Court's analysis of (d)(1), the Court finds that Defendant was effectively denied a meaningful opportunity for judicial review under the Fifth Amendment for the same reasons he was effectively deprived of administrative relief.

## C. Fundamental Unfairness

The Eleventh Circuit has found that the judicial review requirement (Section (d)(2)) and whether the proceeding was fundamentally unfair are intertwined. *Holland*, 876 F.2d at 1536 (finding that errors at the hearing combined with lack of judicial review may render the proceedings fundamentally unfair). *See also United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 n.7 (9th Cir. 2013). Under this provision, the defendant must show that specific errors prejudiced him. *Holland*, 876 F.2d at 1536. The *Holland* court found that the "prejudice need not rise to the level of showing that the defendant would not have been deported, but rather that the errors might have affected the outcome of the hearing." *Id.* An alien must demonstrate that but for a particular error, the outcome of the removal proceedings would have been different. *Zelaya*, 293 F.3d at 1298 (citing *Holland*, 876 F.2d at 1536).

The Government argues that there is no reason to believe that an appeal of Defendant's removal order would have been successful, not because Defendant waived his right to appeal (which the Government has conceded he did not), but because his removal was supported by the law at the time in that a conviction for a DUI under Florida law was considered an aggravated felony for which Defendant was removable. *See United States v. Solis*, 2012 WL 1574647, at *1 (S.D. Fla. 2012). In 2004, however, the Supreme Court in *Leocal v. Ashcroft* reviewed a decision of the Eleventh Circuit holding that Fla. Stat. § 316.193(3)(c)(2), which criminalized driving under the influence of alcohol and causing serious bodily injury, was a crime of

violence under 18 U.S.C. § 16.   543 U.S. 1, 3-4 (2004).   The Court determined that the Florida offense, which incorporated no *mens rea*, could not be a crime of violence for deportation purposes under Section 16(a).   *Id.* at 7-8, 10.

Defendant argues, and the Government agrees, that the *Leocal* decision is retroactive to the removal proceedings, relying on *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005).   In *Rivera-Nevarez*, the court found that the 2004 *Leocal* decision was retroactive to the 1999 removal proceedings because it was a decision of statutory interpretation.   *Id.*   Thus, Rivera-Nevarez's removal was invalid at the time it occurred, as was Urbina-Mora's.   *Id.*

Accordingly, Defendant has sustained his burden of showing that the outcome of the proceedings would have been different because the DUI conviction should not have formed the basis for Defendant's removal.   For this reason and the reasons stated in the discussion above of the first two requirements, I find that the proceedings were fundamentally unfair.

## V.   Conclusion

Concluding that Defendant has established each of the Section 1326(d) factors, he has met his burden of establishing the requirements necessary to mount a successful collateral attack upon his removal.   There is no lawful removal order on which the Government may rely to support the prior removal element of illegal reentry under 8 U.S.C. § 1326(a), and therefore the indictment should be dismissed.

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that Defendant's Motion to Dismiss Indictment With Prejudice Pursuant to 8 U.S.C. § 1326(d) be **GRANTED**, and the indictment be **DISMISSED**.

**DONE** and **ENTERED** in Fort Myers, Florida on this 30th day of March, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:

The Honorable Sheri Polster Chappell
Counsel of record