UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

v.  Case No: 2:13-cr-109-FtM-38CM

JUAN URBINA-MORA
                                                    /

## ORDER[1]

This matter comes before the Court upon consideration of United States Magistrate Judge Carol Mirando's Report and Recommendation (Doc. #43) filed on March 30, 2014. Judge Mirando recommends granting Defendant Juan Urbina-Mora's Motion to Dismiss Indictment with Prejudice (Doc. #24). The Government filed objections to the Report and Recommendation (Doc. #46) on April 14, 2014, and Defendant responded (Doc. #47) on April 15, 2014. Thus, this matter is ripe for review.

## BACKGROUND

Judge Mirando has aptly summarized the facts and procedural history of this case, and the Court will not duplicate her efforts. The Court adopts Judge Mirando's summary as its own and will only reference the following facts that are pertinent to Defendant's Motion.

In brief, Defendant is a native and citizen of Mexico who first entered the United States on or about January 15, 1970. (Doc. #43 at 2). He became a temporary

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

resident on September 8, 1987, and a lawful permanent resident on December 1, 1990. (Id.). Defendant has extensive ties to the United States on account of living and working here for approximately three decades; his wife and four children are also United States citizens. (Id.).

On August 30, 1999, Defendant pled no contest to driving under the influence – his fourth offense (a felony) – and driving with a suspended license. (Id.). The Circuit Court for Hendry County, Florida sentenced Defendant to twenty months and three days imprisonment. (Id. at 2-3). While serving his sentence, the Immigration and Naturalization Services ("INS") initiated removal proceedings against Defendant pursuant to 8 U.S.C. § 1227(a), which permits removal of an alien convicted of an "aggravated felony." (Doc. #43 at 3 (citing 8 U.S.C. § 1227(a)(2)(A)(iii)).

On June 22, 2000, Defendant appeared before Immigration Judge Charles Sanders (hereinafter the "IJ") of the United States Immigration Court.[2] (Id.). During the hearing, Defendant expressed a desire to retain counsel. (Id.). After advising Defendant where he could obtain free legal services, the IJ continued the matter until July 18, 2000 to allow Defendant sufficient time to secure counsel. (Id. at 3-4). Before doing so, however, the IJ advised Defendant that he would have to proceed *pro se* if he did not obtain counsel, and that he had a right to appeal his decision to the Board of Immigration Appeals ("BIA"). (Id. at 4-5). The IJ further noted that a fourth conviction for driving under the influence constituted an "aggravated felony" under federal immigration law, 8 U.S.C. § 1227(a)(2)(A)(iii), meaning if the Government proved its case, he would be automatically deported to Mexico and no relief would be available to

---

[2] The Report and Recommendation contains a transcript of these proceedings, which the Court will not restate here. (Doc. #43 at 4-10).

him.[3] (Doc. #43 at 6) (citing Doc. #34-2 at 6 ("If you are an aggravated felon with the case law there is no relief available to you so you're going to have to go back to Mexico."))).

Defendant's hearing resumed on July 18, 2000. (Id. at 7). Apparently unable to find counsel, Defendant proceeded *pro se*. (Id.) After advising Defendant of his right to appeal to the BIA if he disagreed with the decision, the IJ informed Defendant that he would be deported to Mexico on account of his criminal conviction. (Id. at 8). It is evident from the hearing transcript that this proceeding was anything but affable. (Doc. #34-4). Defendant repeatedly interjected about his inability to retain counsel and the fact that he had a social security card and had worked in the United States for thirty years. (Id.). On the other hand, the IJ tried to explain, albeit confusingly, that he lacked discretion in Defendant's removal case because he was convicted of an aggravated felony under federal law. (Id.). It was in reference to this lack of discretion that the IJ told the Defendant that he had no further relief available. This is apparent from the record:

> Defendant: . . . I've been trying but I can't really do anything here. I've been trying to communicate with my family and I have like no authority to communicate with my family.
>
> IJ: Sir, because you've been convicted of an aggravated felony, there is no relief available to you under the law. So, I have no discretion whatsoever to keep you in the United States, I'm issuing an order sending you back to Mexico if you disagree with this decision you have the right to take an appeal to the Court of Immigration Appeals or you can accept it as final and waive appeal. What would you like to do?

---

[3] Under 8 U.S.C. § 1229b(a), a deportable alien is eligible for discretionary relief in the form of cancellation of removal if he (1) has been an alien lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status; and (3) has *not* been convicted of any aggravated felony.

(Id.). Although Defendant initially refused to waive his right to appeal, he appears to have relented to the IJ's final request:

> Defendant: Well I'll probably, Judge, if you want to deport me that's fine, but afterwards, I want to let you know that when I get down to Mexico and see if I can find an attorney, there's attorneys down there, there's also Americans down there, that live there down there. Find someone that could possibly help me with this matter. I'm not the kind of person who's been involved in, I haven't done anything like, in the sense of killing anybody, I'm not involved in drugs, nothing of that nature, the only problem I have is that thing about being drunk that was (unintelligible).
>
> IJ: Alright, so you accept my decision as final and waive appeal, is that correct?
>
> Defendant: That's fine, that's fine if that's what you want, yes.
>
> IJ: Alright, government accepts the waiver?
>
> Immigration Services Attorney: Yeah.

(Doc. #34-4). Defendant did not appeal the removal order or seek any other relief, and on September 26, 2000, he was deported to Mexico. (Doc. #43 at 11).

Sometime thereafter, Defendant reentered the United States unlawfully. (Id.). He remained undetected until June 26, 2013, when he was found in Hendry County, Florida. (Id.). Defendant was arrested on August 27, 2013, for illegal reentry into the United States after having been previously removed in violation of 8 U.S.C. § 1326(a). (Doc. #1, Doc. #10).

On January 31, 2014, Defendant moved to dismiss the indictment. (Doc. #41). He does not dispute the fact that he was found illegally in the United States; rather, he seeks to collaterally attack his prior removal in September 2000 under 8 U.S.C. §

1326(d). (Doc. #41). After conducting an evidentiary hearing on March 24, 2014, Judge Mirando issued her Report and Recommendation, recommending that Defendant's motion be granted. (Doc. #43).

## STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. See 28 U.S.C. § 636(b)(1); United States v. Powell, 628 F.3d 1254, 1256 (11th Cir. 2010). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also United States v. Farias-Gonzalez, 556 F.3d 1181, 1184 n.1 (11th Cir. 2009). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994). A district court may not reject the credibility determination of a magistrate judge without personally rehearing disputed testimony from the witness. See Powell, 628 F.3d at 1256-58.

Upon due consideration of the Report and Recommendation and an independent examination of the file, the Court accepts the findings and recommendations under the rationale set forth below.

## DISCUSSION

### A. Legal standard

An offense under 8 U.S.C. § 1326(a) occurs where an alien who has been deported or removed from the United States later reenters without proper documentation. See 8 U.S.C. § 1326(a). A defendant charged with violating § 1326(a)

may collaterally attack the validity of his underlying deportation as a defense to a criminal prosecution for illegal reentry. See 8 U.S.C. § 1326(d). To do so, the defendant must demonstrate that (1) he exhausted any administrative remedies that may have been available to challenge the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. See 8 U.S.C. § 1326(d); see also United States v. Lopez-Solis, 503 F. App'x 942, 945 (11th Cir. 2013). If the defendant satisfies all three requirements, the illegal reentry charge must be dismissed. See Smith v. United States, Nos. 10–21507–Civ–COOKE, 09–20952–Cr–COOKE, 2011 WL 837747, at *6 (S.D. Fla. Feb. 4, 2011).

## B. Defendant's Motion to Dismiss the Indictment

In the Report and Recommendation, Judge Mirando concludes that "Defendant has established each of the Section 1326(d) factors," and therefore he "met his burden of establishing the requirements necessary to mount a successful collateral attack upon his removal." (Doc. #43 at 27). The Court addresses Defendant's compliance with each of the three elements required under § 1326(d) in turn.

### 1. Exhaustion of administrative remedies

A defendant's first step in collaterally attacking his underlying removal order is demonstrating that he exhausted the administrative remedies available to him. See 8 U.S.C. § 1326(d)(1). In this case, Defendant undisputedly did not exhaust his administrative remedies, as he did not appeal the IJ's decision to the BIA. (Doc. #43 at 11). Defendant, however, argues he is exempt from § 1326(d)'s exhaustion requirement because he unknowingly and involuntarily waived his right to appeal the

6

IJ's decision. (Doc. #24 at 9-10). Although the Government concedes that Defendant's appeal waiver is invalid, it contends he nevertheless failed to exhaust his administrative remedies because he could have appealed but chose not to. (Doc. #28 at 5). The Government specifically stresses that Defendant knew he could appeal because he told the IJ he wanted to hire an attorney once he returned to Mexico, and thus his inaction in obtaining an attorney and appealing precludes him from collaterally attacking his underlying removal order. (Doc. #28 at 5; Doc. #46 at 2).

Agreeing with Defendant, Judge Mirando found that Defendant was "exempt from exhausting his administrative remedies" because he unknowingly and involuntarily waived his right to appeal the IJ's decision.[4] She favors excusing Defendant from the exhaustion requirement because his failure to exhaust resulted from his invalid waiver of the right to an administrative appeal. (Doc. #43 at 24). According to Judge Mirando, excusing the exhaustion requirement aligns with due process because the IJ made material misstatements to Defendant, a *pro se* alien, "about the viability of his appellate rights" while simultaneously "attempt[ed] to obtain a knowing and considered decision from Defendant whether to waive appeal." (Doc. #43 at 24). The IJ's actions precluded Defendant from "meaningful" opportunity for review. (Doc. #43 at 24).

This case turns on whether the Court should excuse or exempt Defendant from the exhaustion requirement because his appeal waiver before the IJ was unknowing and involuntary. The Eleventh Circuit Court of Appeals has not addressed this specific issue, and thus the Court turns to sister circuits for persuasive authority. See United

---

[4] The Report and Recommendation offers a comprehensive analysis as to whether Defendant's waiver was "considered and intelligent," (Doc. #43) which the Court will not repeat because the Government concedes that Defendant "did not waive his right to appeal the order of deportation" (Doc. #28 at 5).

7

States v. Davenport, 935 F.2d 1223, 1232 (11th Cir. 1991) (stating that in a case of first impression, courts may seek guidance from analogues cases in other circuits).

In United States v. Sosa, 387 F.3d 136 (2d Cir. 2004), the Second Circuit addressed this issue and concluded that the administrative exhaustion requirement of § 1326(d)(1) is properly excused when the defendant's failure to pursue administrative relief is the result of an invalid appeal waiver before the immigration court. Specifically, the court held:

> [b]ecause Section 1326(d) was intended as a response to, and codification of, *Mendoza-Lopez*,[5] its administrative exhaustion requirement must be subject to at least one significant exception to render it consistent with that decision. . . . There was almost certainly no administrative exhaustion in *Mendoza-Lopez* itself, . . ., yet the Court held that collateral review of the underlying deportation order was constitutionally required.  Therefore, the exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal. Otherwise, Section 1326(d) would violate *Mendoza-Lopez* by prohibiting collateral attacks of deportation proceedings that were fundamentally unfair because they denied the alien an opportunity for judicial review. . . .
>
> A failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1), therefore, only where an alien's waiver of administrative review was knowing and intelligent.

Sosa, 387 F.3d at 136-37 (internal citations omitted); see also United States v. Caleron, 391 F.3d 370, 371 (2d Cir. 2004) (excusing the exhaustion requirement where the defendant unknowingly and unintelligently waived his right to appeal). The Ninth Circuit has similarly concluded that a defendant is properly excused from § 1326(d)'s

---

[5] In United States v. Mendoza Lopez, 481 U.S. 828, 839 (1987), the Supreme Court explained that due process requires that an alien be permitted to collaterally challenge the use of an underlying deportation proceeding as an element of a criminal offense where the deportation proceeding effectively eliminated the alien's right to obtain judicial review.

exhaustion requirement when his administrative appeal waiver contravenes due process. See United States v. Pallares-Galan, 359 F.3d 1088, 1091 (9th Cir. 2004); see also United States v. Boliero, 923 F. Supp. 2d 319, 331 (D. Mass. 2013) (stating that "to comply with the constitutional principal enunciated in *Mendoza-Lopez*, exceptions to the section 1325(d)(1) exhaustion requirement must exist. Particularly, failure to appeal to the BIA must be excused where the failure occurred as a result of due process violation, and thus, was not a knowing and intelligent waiver.").

Drawing upon the aforementioned persuasive authority, the Court excuses Defendant from § 1326(d)'s exhaustion requirement on account of Defendant's undisputed, invalid appeal waiver. See Sosa, 387 F.3d at 137 ("It would offend the principles enunciated in *Mendoza-Lopez* not to excuse the administrative exhaustion requirement under such circumstances."). Stated differently, the prior removal order cannot, as a matter of law, serve as a legitimate order under § 1326(a) because Defendant undisputedly did not validly waive his right to appeal.

Accordingly, because Defendant was effectively deprived of administrative relief, he is not barred from collaterally attacking the lawfulness of his underlying deportation notwithstanding his failure to exhaust his administrative remedies. See Pallares-Galan, 359 F.3d at 1091.

2. Opportunity for judicial review

The second element of § 1326(d) requires a defendant to demonstrate that the deportation proceedings improperly deprived him of the opportunity for judicial review. See 8 U.S.C. § 1326(d)(2). "The Court's analysis regarding the exhaustion of administrative remedies is necessarily intertwined with its consideration of whether

Defendant was improperly deprived of the opportunity for judicial review. (Doc. #43 at 24-25); see also United States v. Lopez, 445 F.3d 90, 99 n.6 (2d Cir. 2006) (stating the court's analysis of § 1326(d)(1) and (d)(2) are often the same because "an invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid"). Accordingly, for the same reasons Defendant was deprived of administrative relief (i.e., Defendant's appeal waiver was concededly unknowing and involuntary), the Court finds Defendant was denied a meaningful opportunity for judicial review. See e.g., United States v. Boliero, 923 F. Supp. 2d 319, 331 (D. Mass. 2013) (finding that because due process violations prevented the defendant from exhausting administrative remedies, the same violations deprived her of the opportunity for judicial review). To that end, Defendant is excused from not appealing the IJ's decision to any federal court. The Court, therefore, will turn to the third and final element of § 1326(d).

    3. "Fundamentally unfair"

As previously stated, the third element to a collateral attack is satisfied when the defendant demonstrates the entry of the removal order was fundamentally unfair. See 8 U.S.C. § 1326(d)(3). "[F]undamental unfairness requires a showing that specific errors prejudiced the defendant." United States v. Holland, 876 F.2d 1533, 1536 (11th Cir. 1989). "The prejudice need not rise to the level of showing that the defendant would not have been deported, but rather that the errors might have affected the outcome of the hearing." Holland, 876 F.2d at 1536; see also United States v. Zelaya, 293 F.3d 1294, 1298 (11th Cir. 2002) ("An alien characterizing a deportation as fundamentally unfair

must, at a minimum, demonstrate that the outcome of the deportation proceeding would have been different but for a particular error." (citation omitted)).

Here, Defendant argues that he satisfies § 1326(d)(3) because the Supreme Court has since concluded that the Florida DUI statute that he was convicted under is not an "aggravated felony" to warrant removal. See Leocal v. Ashcroft, 543 U.S. 1, 7-10 (2004). According to Defendant, if the IJ had not taken his invalid appeal waiver, he could have appealed his removal and "obtain[ed] the ruling which Leocal obtained only four short years after [his] removal hearing." (Doc. #24 at 12). In response, the Government asserts "[t]here is no reason to believe that an appeal would have been successful, not because defendant waived his right to appeal, but because his deportation was supported by the law at the time" in that a conviction for a DUI under Florida law was considered an aggravated felony for which Defendant was removed. (Doc. #28 at 6).

After weighing the parties' arguments, Judge Mirando found, and the Court agrees, that Defendant's removal proceedings were fundamentally unfair in light of Leocal. (Doc. #43 at 27). The retroactive effect of Leocal, which the parties do not dispute, means that Defendant's "removal was invalid at the time it occurred." (Doc. #43 at 27 (citing Rivera-Nevarez, 418 F.3d at 1107)). Accordingly, Defendant has sustained his burden of showing that the outcome of the proceedings would have been different because his underlying conviction of driving under the influence should not have formed the basis for Defendant's removal.

Based on the foregoing, the Court finds there is no lawful removal order on which the Government may rely to support the prior removal element of illegal reentry under 8 U.S.C. § 1326(a).

Accordingly, it is now

**ORDERED:**

1. The Report and Recommendation of United States Magistrate Judge Carol Mirando (Doc. #43) is **ADOPTED** and the findings incorporated herein.

2. Defendant Juan Urbina-Mora's Motion to Dismiss Indictment with Prejudice (Doc. #24) is **GRANTED**.

3. The trial set for the trial term beginning on June 2, 2014, at 9:00 a.m. in Fort Myers Courtroom 5D before the undersigned is terminated.

4. The Clerk of the Court is directed to enter judgment accordingly, terminate any pending motions, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of May, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record